1  Robert P. Goe – State Bar No. 137019
   Charity J. Manee – State Bar No. 286481
2  **GOE FORSYTHE & HODGES LLP**
   17701 Cowan, Bldg. D, Suite 210
3  Irvine, CA 92614
   rgoe@goeforlaw.com
4  cmanee@goeforlaw.com
   Telephone:  (949) 798-2460
5  Facsimile:   (949) 955-9437

6  Attorneys for Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>2ND CHANCE INVESTMENT GROUP, LLC,<br><br>      Debtor and Debtor in Possession. | Case No.  8:22-bk-12142-SC<br><br>Chapter 11 Case<br><br>Adv. Case No.: 8:25-ap_____-SC |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>      Plaintiff,<br>-vs-<br><br>SALVADOR JIMENEZ, an individual, and DOES 1-10,<br><br>      Defendant. | **COMPLAINT FOR:**<br><br>1) **AVOIDANCE OF TRANSFERS PURSUANT TO 11 U.S.C. § 544(b) AND CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05;**<br>2) **AVOIDANCE OF TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(B);**<br>3) **AVOIDANCE OF TRANSFERS PURSUANT TO 11 U.S.C. § 544(b) AND CAL. CIV. CODE §§ 3439.04(a)(1);**<br>4) **AVOIDANCE OF TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(A);**<br>5) **RECOVERY OF AVOIDED TRANSFERS PURSUANT TO 11 U.S.C. § 550; and**<br>6) **DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502** |

The Official Committee of Unsecured Creditors of the bankruptcy estate of 2ND Chance Investment Group, LLC ("Debtor"), and Plaintiff in this adversary proceeding ("Committee" or "Plaintiff"), respectfully alleges as follows:

## I. SUBJECT MATTER JURISDICTION AND VENUE

1. This adversary proceeding arises in and relates to the Debtor's pending chapter 11 bankruptcy case entitled *In re 2nd Chance Investment Group, LLC.*, Case No. 8:22-bk-12142-SC ("Bankruptcy Case").

2. On December 21, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

3. This Court has jurisdiction to adjudicate the issues raised in this adversary proceeding under 28 U.S.C. § 1334.

4. This action is a core proceeding under 28 U.S.C. § 157(b). Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiff consents to the Bankruptcy Court entering final a judgment and/or order.

5. This adversary proceeding involves property worth more than $1,000 and does not involve a consumer debt. Venue in this judicial district is appropriate under 28 U.S.C. §§ 1409(a) and/or (c) because the Bankruptcy Case is pending in the Central District of California.

6. To the extent Plaintiff asserts claims under 11 U.S.C. § 544, Plaintiff asserts that there exists in this case one or more creditors holding unsecured claims allowable under 11 U.S.C. § 502 or not allowable under 11 U.S.C. § 502(e), who can avoid the prospective transfers as set forth hereinafter under California or other applicate state or federal law.

## II. THE PARTIES

7. Plaintiff was appointed as the Creditors' Committee on February 6, 2023. Pursuant to the Bankruptcy Court's *Order Approving Stipulation Between Debtor and the Official Committee of Unsecured Creditors Granting the Committee Standing to Pursue Certain Avoidance Actions on Behalf of the Estate* entered on March 22, 2023 in the Bankruptcy Case at Docket Entry No. 77, the terms of which were incorporated into the *Debtor's First Amended Liquidating Plan as Modified* [Docket No. 296 in the Bankruptcy Case] (the "Plan"), which was

confirmed by the *Order Confirming Debtor's First Amended Chapter 11 Liquidating Plan As Modified* entered on February 12, 2024 [Docket No. 381 in the Bankruptcy Case] ("Confirmation Order"), Plaintiff is the representative of the bankruptcy estate whose authority, subject to limitations not relevant to the claims stated herein, includes, but is not limited to pursuing, suing on, and settling all actions, arising under Bankruptcy Code sections 502, 510, 544, 545, 547, 548, 549, 550 and 553, or any avoidance actions under applicable non-bankruptcy law. Plaintiff is also empowered to prosecute, pursue, and resolve all claims held by the estate and objections to claims in the Bankruptcy Case.

8.  Plaintiff brings this action solely for the benefit of the estate created by the liquidating trust formed pursuant to the Plan and Confirmation Order, and the beneficiaries thereof, which includes the Debtor's creditor body.

9.  By virtue of Plaintiff consisting of a committee of creditors, Plaintiff may not have personal knowledge of many of the facts alleged in this Complaint and, therefore, where appropriate, alleges certain facts on information and belief.

10. Defendant Salvador Jimenez ("Defendant") is an individual and resident of the State of California.

### III.  GENERAL ALLEGATIONS

11. The allegations contained in paragraphs 1-10, inclusive, are re-alleged and incorporated herein by this reference, as though set forth in full.

12. During the four years prior to the Petition Date, the Debtor was caused to transfer funds directly to Defendant in the aggregate amount of at least $1,754,000 ("Transfers").

13. The Transfers were transfers of money from the Debtor's operating bank account maintained with East West Bank, ending in account number 4577 ("EWB Account").

14. An itemized listing of the Transfers, including details describing salient aspects of each individual transfer, is attached hereto as **Exhibit "1"** and is incorporated herein.

15. Plaintiff is informed and believes that, during the four years leading up to the Petition Date, the Rayshon and Sonja Foster, who owned and controlled the Debtor, caused the Debtor to make the Transfers for purposes unrelated to any legitimate business purpose of the

Debtor. Moreover, Plaintiff is informed and believes that Defendant was the direct neighbor of the Fosters, all of whom lived on Clemson Street in Corona, California, when the Transfers were made to Defendant.

16. The Transfers were made directly to Defendant.

17. Plaintiff is informed and believes that the Transfers were intended to be disguised as loan repayments but were in fact a ruse used by the Fosters to deplete the Debtor of its assets and to place Debtor's property out of the reach of the legitimate creditors of the Debtor.

18. During the Debtor's bankruptcy case, Defendant filed eighteen (18) separate secured claims, Proof of Claim numbers 8 through 25 (the "Claims"), against the Debtor's estate, alleging $1,201,200 is owed by the Debtor to Defendant, in the aggregate.

19. Attached to the Claims are various promissory notes reflecting that Defendant charged the Debtor facially usurious interest for Defendant's purported loans to the Debtor.

20. The only documents showing that Defendant funded loans to the Debtor that are attached to the Claims are various checks written by Carmen Molina to the Debtor.

21. Plaintiff is informed and believes that Carmen Molina is the spouse of the Defendant.

22. Prior to filing this Complaint, Plaintiff requested that Defendant provide documentation supporting all payments by Defendant to Plaintiff constituting loan fundings or otherwise. Defendant provided a copy of the same checks attached to the Claims and no other evidence of payments made to the Debtor.

23. The checks attached to the Claims total $870,000.

24. To summarize, the Defendant made alleged loans to the Debtor in the principal sum of $870,000, received a full return of this principal plus more than the principal in usurious interest of $884,000 for total payment received of $1,754,000. Defendant has nevertheless filed the Claims seeking a whopping additional $1,201,200 in money due to him. In other words, Defendant claims to be due $2,995,000 on account of alleged loans made in the aggregate principal sum of $870,000.

///

25. The details for each check made out to the Debtor to by Defendant's spouse on account of the loans Defendant was purportedly making the Debtor, according to the documents attached to the Claims are as follows:

| Date of Check | Amount of Check | Check Number |
|---|---|---|
| 5/19/2022 | $60,000 | 2491 |
| 7/21/2022 | $50,000 | 6315 |
| 8/2/2022 | $50,000 | 6326 |
| 8/2/2022 | $50,000 | 6317 |
| 8/24/2022 | $50,000 | 6312 |
| 8/24/2022 | $50,000 | 6324 |
| 8/24/2022 | $50,000 | 6322 |
| 7/26/2022 | $50,000 | 6314 |
| 7/26/2022 | $50,000 | 6316 |
| 5/19/2022 | $60,000 | 2490 |
| 4/8/2022 | $60,000 | 2937 |
| 5/19/2022 | $30,000 | 3393 |
| 8/2/2022 | $50,000 | 6318 |
| 8/2/2022 | $50,000 | 6319 |
| 10/22/2021 | $50,000 | 3400 |
| 9/28/2021 | $55,000 | 3398 |
| 9/28/2021 | $55,000 | 3399 |

26. No funds were paid by or on behalf of Defendant to the Debtor other than the payments made by check that are summarized in paragraph 25 of this Complaint.

27. Upon information and belief, at all times relevant to this Complaint, creditors of the Debtor (holding unsecured claims allowable within the meaning of Sections 502 and 544(b) of the Bankruptcy Code) existed that could have avoided the Transfers described herein under applicable state voidable transfer law including, but not limited to, California Civil Code § 3439 *et seq*.

**FIRST CLAIM FOR RELIEF**

**(Avoidance of Fraudulent/Voidable Transfers Pursuant to 11 U.S.C. § 544(b)(1); Cal. Code §§ 3439.04(a)(2), 3439.05 Against All Defendants)**

28. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 27 as though set forth in full.

29. The Transfers were transfers of the Debtor's property made within four (4) years of the Petition Date to or for the benefit of the Defendant in the amounts set forth in Exhibit 1.

30. When the Transfers were made, the Debtor was aware of its mounting debts.

31. The Debtor received less than reasonably equivalent value in exchange for the Transfers and in fact received no legally cognizable value for the Transfers, given the unlawful terms of the alleged loans made by Defendant to Debtor pursuant to which the Transfers were nominally made.

32. The Debtor was insolvent when the Transfers were made or it became insolvent as a result of the Transfers.

33. Indeed, when the Debtor filed its bankruptcy petition, it had accumulated over $8.7 million in unpaid liabilities and its attempted liquidation of its real estate assets yielded less than half a million dollars in net proceeds.

34. Upon information and belief, during the entire period during which the Debtor was operating, the Debtor owed far more to creditors, secured and unsecured, than it ever owned in valuable property. This is because Debtor tended to acquire real properties using secured loans, including purchase money loans, but also was incurring substantial unsecured liabilities to acquire real properties. The Claims are a prime example of the type of unsecured debt the Debtor would incur, on unfair, illegal and usurious terms in the case of the Claims.

35. During its operations, Debtor was unable to return payment of principal to its unsecured lenders, and defaulted in payment of its secured loans. Debtor also owned no other assets of any substantial value beyond real estate and cars, both categories of which assets had little to no equity due to Debtor having acquired the same with using secured debt.

36. At the time the Transfers were made, the Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

37. The Transfers are avoidable pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05.

## SECOND CLAIM FOR RELIEF

### (Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. §548(a)(1)(B) Against All Defendants)

38. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 37 as though set forth in full.

39. The Transfers were transfers of the Debtor's property.

40. As reflected in Exhibit 1, most of the Transfers were made within two (2) years preceding the Petition Date (i.e., from December 21, 2020 through December 21, 2022). The subset of the Transfers that were made to Defendant during this period from the Debtor's EWB Account totaled $1,108,000 ("Two-Year Transfers").

41. When the Two-Year Transfers were made, the Debtor was aware of its mounting debts.

42. Debtor received less than reasonably equivalent value in exchange for the Two-Year Transfers and in fact received no value from the Defendant on account of the Two-Year Transfers.

43. Debtor was insolvent when the Two-Year Transfers were made or became insolvent as a result of the Transfers.

44. At the time the Two-Year Transfers were made, the Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

45. The Two-Year Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

\\\

## THIRD CLAIM FOR RELIEF

### (Avoidance of Fraudulent/Voidable Transfers Pursuant to 11 U.S.C. § 544(b)(1); Cal. Code §§ 3439.04(a)(1) Against All Defendants)

46. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 45 as though set forth in full.

47. The California's Uniform Voidable Transactions Act provides, inter alia, that a transfer is fraudulent as to a creditor, regardless of when the creditor's claim arose, if the Debtor made the transfer with the actual intent to hinder, delay, or defraud any creditor. (*See* California Civil Code §3439.04 California Civil Code §3439.04(a)(1).)

48. As long as the debtor had the requisite fraudulent intent, a transfer will qualify as an actually fraudulent transfer, even if reasonably equivalent value was provided. Because §3439.04(a)(1)'s language regarding the debtor's state of mind is in the disjunctive, intent to defraud a creditor is not required. Either an intent to hinder or an intent to delay a creditor will also suffice.

49. The Transfers were transfers of the Debtor's property made within four (4) years of the Petition Date. The Transfers were made on the dates and in the amounts reflected on Exhibit 1.

50. The Transfers were made with the actual intent to hinder, delay or defraud Debtor's legitimate creditors as evidenced by the fact that the Transfers involved at least two indicia of fraud as delineated by the Ninth Circuit in *In re Acequia, Inc.*, 34 F.3d 800 (9th Cir. 1994), namely that they were made at a time the Debtor was woefully insolvent and a special relationship existed between the Debtor's owners, Mr. and Mrs. Foster, and therefore the Debtor, on the one hand and Defendant, their neighbor, on the other hand.

51. The Transfers also fall within the pattern of the Fosters, both signatories on the Debtor's EWB Account, habitually depleting the Debtor's funds and property for improper purposes totally unrelated to any legitimate business purpose, including to fund their lavish lifestyle, causing the Debtor to pay hundreds of thousands of dollars toward their own personal credit card liabilities, including by making the Transfers.

52. Finally, a further indicia of fraud relating to the Transfers is the outlandish rate of return set forth in the promissory notes attached to the Claims, which despite slight variations in language, consistently resulted in usurious interest being charged, in addition to the even higher rate of interest Defendant claims to be owed based on the total amount actually received from the Debtor of $1,754,000 in connection with the Transfers plus the expectation, demand and assertion that Defendant is owed and should be paid an additional $1,201,000, as reflected in the aggregate amounts sought by the Claims.

53. The Transfers were made in furtherance of the scheme of the Debtor to defraud its legitimate creditors.

54. Based on the foregoing, Plaintiff is entitled to an order and/or judgment avoiding the Transfers.

## FOURTH CLAIM FOR RELIEF

**(Avoidance of Fraudulent/Voidable Transfers Pursuant to 11 U.S.C. § 548(a)(1), Against All Defendants)**

55. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 54 as though set forth in full.

56. Bankruptcy Code section 548(a)(1)(A) provides that a transfer is fraudulent as to a creditor if the Debtor made the transfer with the actual intent to hinder, delay, or defraud any creditor.

57. The Two-Year Transfers were transfers of the Debtor's property made within two (2) years preceding the Petition Date to Defendant.

58. The Two-Year Transfers were made with the actual intent to hinder, delay or defraud Debtor's legitimate creditors.

59. Based on the foregoing, Plaintiff is entitled to an order and/or judgment avoiding the Two-Year Transfers.

\\\

## FIFTH CLAIM FOR RELIEF

**(Recovery of Voidable Transfers Pursuant to 11 U.S.C. § 550 Against All Defendants)**

60. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 59 as though set forth in full.

61. Based on the foregoing claims for relief and the facts set forth herein, the Transfers are all recoverable by Plaintiff.

62. The Transfers, including the Two-Year Transfers, are recoverable from the Defendant pursuant to 11 U.S.C. § 550(a) or Plaintiff is entitled to a judgment requiring payment by Defendant to Plaintiff of the value of the Transfers, including the Two-Year Transfers.

## SIXTH CLAIM FOR RELIEF

**(Disallowance of Claims Pursuant to 11 U.S.C. § 502 Against All Defendants)**

63. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 62 as though set forth in full.

64. Defendant has not paid the amount of the Transfers, or any part of them, including the Two-Year Transfers, nor turned over such property, for which Defendant is liable under 11 U.S.C. §550.

65. Pursuant to 11 U.S.C. § 502(d), any and all claims of Defendant and/or his assignees against the Debtor's estate and/or liquidating trust must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of all of the Transfers, plus interest thereon and costs.

66. Pursuant to 11 U.S.C. § 502(j), any and all claims of Defendant and/or his assignees against the Debtor's estate previously allowed must be reconsidered and disallowed until such time as Defendant pay to Plaintiff an amount equal to the aggregate amount of all of the Transfers which have been avoided under 11 US.C. § 550.

\\\

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against all Defendant as follows:

**ON THE FIRST, SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF**

1. For judgment avoiding the Transfers.

**ON THE FIFTH CLAIM FOR RELIEF**

2. For recovery of the Transfers or their value in the form of a money judgment.

**ON THE SIXTH CLAIM FOR RELIEF**

3. Judgment disallowing, in accordance with 11 U.S.C. §§ 502(d) and (j), any claims held by Defendant and/or his assignees until Defendant satisfy the judgment granted in this action.

**ON ALL CLAIMS FOR RELIEF**

4. For interest as permitted by law from the date of the Transfers or Two-Year Transfers, as the case may be;

5. For costs of suit incurred herein, including, without limitation, attorneys' fees; and

6. For such other and further relief as the Court deems just and proper.

Dated: March 31, 2025

Respectfully submitted by,

**GOE FORSYTHE & HODGES LLP**

By: /s/*Robert P. Goe*
    Robert P. Goe
    Charity J. Manee
    Counsel to Official Committee of
    Unsecured Creditors

# EXHIBIT 1

# EXHIBIT 1

**In Re: 2nd Chance Investment Group, LLC**
**Case Number: 8:22-bk-12142-SC**
**Transactions related to Salvadoe Jimenez**
**Source: East West Bank Statements account xx4577**
**Date Range: December 22, 2018 to December 21, 2022**

| Account Name | Transaction Date | Check Number | Amount | Bank Statement Description |
|---|---|---|---|---|
| 2nd Chance Investment Group, LLC | 1/16/2019 | 1124 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 3/7/2019 | 1186 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 8/28/2019 | 987 | 62,500.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 10/29/2019 | 1651 | 187,500.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 1/29/2020 | 772 | 132,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 12/15/2020 | 2138 | 144,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 1/26/2021 | 1996 | 150,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 5/6/2021 | 2249 | 100,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 7/7/2021 | 2321 | 123,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 8/16/2021 | 2357 | 75,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 4/4/2022 | 2836 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 4/4/2022 | 2838 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 4/4/2022 | 2837 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 5/11/2022 | 2611 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 5/11/2022 | 2612 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 6/10/2022 | 2622 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 6/10/2022 | 2621 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 7/20/2022 | 2625 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 7/20/2022 | 2624 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 8/22/2022 | 2746 | 60,000.00 | Salvador Jimenez |
| 2nd Chance Investment Group, LLC | 8/22/2022 | 2747 | 60,000.00 | Salvador Jimenez |
| | | Total | 1,754,000.00 | |